UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re:

                                 Case No. 23-70447 (REG)

RJT FOOD & RESTAURANT, LLC,

                                   Chapter 11

              Debtor.

-----------------------------------------------------------------x

2027 DEERFIELD LTD AND GEORGE GULDI
FAMILY TRUST OF APRIL 19, 2000,

              Plaintiffs,                    Adv. Pro. No.: 24-08007 (REG)

        -against-

RJT FOOD & RESTAURANT, LLC, RICHARD
BIVONA, DANMIK INVESTORS LLC, ESTATE
OF ROBERT VOTO AND PENSCO TRUST
COMPANY, F/B/O EDITH K. SPIEGEL, IRA,

              Defendants.

-----------------------------------------------------------------x

## <u>**DECISION**</u>
[Re: Motions for Summary Judgment ECF 35, 37, 41]

     Before the Court are motions for summary judgment by certain of the Defendants, and a

cross-motion for summary judgment by the Plaintiffs. The first motion is by the chapter 11

trustee ("Trustee") on behalf of the debtor, RJT Food & Restaurant LLC (the "Debtor") who is a

Defendant in this adversary proceeding. ECF 35.[1] The second motion is by the Defendants,

Estate of Robert Voto, Edith K. Spiegel, and Pacific Premier Trust Company f/b/o Edith K.

Spiegel[2] ("Spiegal/Voto"), and Danmik Investors LLC ("Danmik") (together, the "Mortgagee

---

[1]        Unless otherwise stated, the ECF references herein are to Adv. Proc. No. 24-8007.

[2]        The Mortgagee Defendants' motion states that the Estate of Robert Voto, Edith K. Spiegel, and
Pacific Premier Trust Company f/b/a Edith K. Spiegel were sued incorrectly as Estate of Robert Votto and
Pensco Trust Company f/b/o Edith K. Spiegel, IRA.

Defendants") (the Trustee and Mortgagee Defendants are together referred to herein as the "Defendants"). ECF 37. George Guldi ("Guldi"), an individual purporting to act on behalf of the Plaintiffs, 2027 Deerfield Ltd. ("2027 Deerfield"), and George Guldi Family Trust of April 19, 2000 ("Guldi Trust") (together the "Plaintiffs"), opposes the motions and filed a cross-motion for summary judgment in favor of the Plaintiffs. ECF 41.

This adversary proceeding arises out of a dispute over the ownership of 1999 Deerfield Road, Watermill, New York (the "Property").[3] The Plaintiffs claim that a 2015 deed ("2015 Deed") transferring the Property from 2027 Deerfield to the Debtor was fraudulent, and 2027 Deerfield should be declared the rightful owner of the Property despite legal title having been held by the Debtor since 2015. The Plaintiffs also seek to have declared *void ab initio* approximately $1.4 million in consensual mortgages placed on the Property by the Debtor in 2015.

The Mortgagee Defendants argue that the 2015 Deed transferring the Property to the Debtor was part of a scheme designed by the Plaintiffs, the Debtor, Guldi and Bivona to shield the Property from Guldi's creditors including the government who had claims against Guldi as a consequence of Guldi's criminal convictions. The Defendants argue that the Plaintiffs' failure to enforce their rights they claim to have to the Property are now barred under various estoppel theories, *res judicata*, laches, unclean hands, ratification and adverse possession. In essence, the Mortgagee Defendants argue that this Court should not as a matter of law and equity become an accomplice to the fraudulent conduct of Guldi and the Plaintiffs.

---

[3]     According to the Plaintiffs, the street address of the Property was formerly known as 2027 Deerfield Road, but it was renumbered as 1999 Deerfield Road because the number 2027 is a Sag Harbor, NY address and the Property is located in Watermill. Complaint, ECF 1 (hereinafter "Compl.") ¶¶ 18-19.

For the reasons that follow, the Court will grant the Defendants' motions in part and deny the Plaintiffs' cross-motion in full.

## FACTS AND PROCEDURAL HISTORY

### *Acquisition of the Property*

Walter Guldi ("Walter") purchased the Property on August 6, 2004. Compl. ¶ 15.[4] At that time, Walter executed a mortgage to MERS as nominee for Greenpoint Mortgage Funding, Inc. ("Greenpoint") in the amount of $1,500,000 ("Greenpoint Mortgage"), and a HELOC in the amount of $300,000 ("Greenpoint HELOC").[5] Mortgagee Defendants' Statement of Undisputed Facts, ECF 37-2 (hereinafter "ECF 37-2"), ¶ 3.

On November 10, 2004, Walter conveyed the Property to 2027 Deerfield an entity owned by his son, George Guldi ("Guldi"). Compl. ¶¶ 1-2, 17. On October 1, 2008, Guldi transferred all 100 shares of 2027 Deerfield to the Guldi Trust, making the Guldi Trust the indirect owner of the Property. Compl. ¶¶ 26-28. Guldi is the beneficiary, as well as a co-trustee of the Guldi Trust. Compl. ¶ 4.

In May 2005, MERS as nominee for Greenpoint commenced a foreclosure proceeding against the Property. Herbst Decl., Ex. N, ECF 35-18, ¶ 22. The foreclosure action, continued by subsequent assignees of Greenpoint, ultimately was dismissed in 2013 for lack of standing. *Homecomings Fin., LLC v. Guldi*, 969 N.Y.S.2d 470 (N.Y. App. Div. 2013). The Greenpoint mortgages were not voided at that time, but it appears that foreclosure proceedings were never recommenced. Herbst Decl., Ex. N, ECF 35-18, ¶¶ 33, 34.

---

[4]     For purposes of this Decision, the Court will accept certain undisputed factual allegations of the Complaint as true.

[5]     Although the Mortgagee Defendants state that the $300,000 mortgage was in favor of Rescom Holdings, it appears that this mortgage was originated by Greenpoint. Decl. of Harry Reidler, Esq. ("Reidler Decl."), Ex. 1, ECF 37-20 at 2.

### *Guldi's Criminal History*

On March 25, 2009, the Suffolk County District Attorney indicted Guldi, an attorney, for his participation in a mortgage fraud scheme. (Indictment No. 1709/2009, "2009 Mortgage Fraud Case"). Later that year, Guldi was indicted in Suffolk County a second time for theft of insurance funds. (Indictment No. 2066/2009, "2009 Insurance Fraud Case"). Guldi pled guilty in the 2009 Mortgage Fraud Case, and after a trial was convicted in the 2009 Insurance Fraud Case. On March 21, 2011, in the 2009 Insurance Fraud Case, Guldi was sentenced to a prison term of three to six years for grand larceny, and one to three years for insurance fraud. Herbst Decl., Ex. D, ECF 35-8. He was directed to pay the sum of $863,473 as restitution, and he was ultimately disbarred. *In re Guldi*, 925 N.Y.S.2d 336 (N.Y. App. Div. 2011). Guldi remained incarcerated from February 2011 until July 2017 when his conviction in the 2009 Insurance Fraud Case was overturned on appeal based on a finding of reversible error resulting from the trial court's denial of Guldi's challenge to one of the jurors. *People v. Guldi*, 59 N.Y.S.3d 385 (N.Y. App. Div. 2017).

In 2019, Guldi was indicted again, this time by the United States Attorney's Office for the Southern District of New York for offenses committed during his prior incarceration (Case No. 19-cr-0126 (AKH), "2019 Bank Fraud Case"). Guldi was appointed a public defender, citing financial hardship. Miller Decl., Ex. 9, ECF 37-12. On January 25, 2023, Guldi was convicted of wire and bank fraud in the 2019 Bank Fraud Case. In August 2023, he was sentenced to three years in prison and directed to pay $358,556 in restitution. Herbst Decl., Ex. E, ECF 35-9, Judgment. Guldi was re-incarcerated in March 2024 and is currently in prison serving his sentence.

### *Guldi's Financial Disclosures*

Over the years, Guldi was required to submit financial disclosures in connection with these criminal proceedings. These forms are required by the court and bureau of prisons and are filed under oath. In a March 2010 affidavit ("2010 Affidavit") supporting his petition to modify an order of attachment in the 2009 Mortgage Fraud Case to allow him to pay his legal fees, Guldi attested that he had "absolutely no financial resources" to pay his criminal attorney, and his "income since the filing of [the criminal] charges is minimal to non-existent" except that he "did receive $500 in November of 2009 in attorney fees for defending an individual in a traffic court matter . . .." Miller Decl., Ex. 5, ECF 37-8, 2010 Affidavit, ¶¶ 4, 5. Guldi reported that he had "no other sources of income" to pay his counsel fees. *Id.* ¶ 12. As an exhibit to the 2010 Affidavit, Guldi attached a Financial Disclosure Affidavit ("2009 Affidavit") that he had previously submitted to Suffolk County Family Court in October 2009 in connection with child support obligations. In the 2010 Affidavit, Guldi attested that the assets, debts and expenses set forth in the 2009 Affidavit had not changed since he signed it. *Id.* ¶ 8. In the 2009 Affidavit Guldi identified his current income as "de minimis" and coming from the sale of assets and approximately $1,000 per month in rents. Miller Decl., Ex. 5, ECF 37-8, Ex. A at 2.

On March 6, 2023, in connection with the 2019 Bank Fraud Case, Guldi submitted a Net Worth Statement to the U.S. Probation Office ("2023 Net Worth Statement"). Miller Decl., Ex. 10, ECF 37-13. Guldi disclosed his interest in the Guldi Trust, but stated it had "no income, no value, no asset changes." *Id.,* Section J. Guldi also stated that there was no money owed to him by others. *Id.*, Section C. Guldi did not provide an answer in the section of the Net Worth Statement that sought disclosure of interests in real estate. *Id.*, Section G. The U.S. Probation Office followed up with Guldi's counsel via email asking a series of questions regarding Guldi's

March 2023 disclosures. Miller Decl., Ex. 11, ECF 37-14. These questions sought clarity on, among other things, whether Guldi owned any real estate in his own name, under an LLC or trust, or in someone else's name but for which he had control. Miller Decl., Ex. 11, ECF 37-14. Guldi's supplemental submission to the 2023 Net Worth Statement did not reference the Guldi Trust, 2027 Deerfield, or the Property. Miller Decl., Ex. 11, ECF 37-14. On August 2, 2023, shortly after the supplement to Guldi's 2023 Net Worth Statement, the District Court for the Southern District of New York issued a restitution order allowing restitution to be paid in installments based in part on "the financial resources and other assets of" Guldi. Miller Decl., Ex. 12.

### *Guldi and Bivona*

Richard Bivona is the principal of the Debtor and the individual who Plaintiffs allege forged the 2015 Deed from 2027 Deerfield to the Debtor. Guldi and Bivona were business associates and friends. Tr. Dec. 11, 2023 at 80. Bivona testified that he helped Guldi and his family financially to the tune of a couple of hundred thousand dollars from 2009 to 2011. *Id.* at 82-84. He visited Guldi several times in prison and even took Guldi's daughter under his care for some time. *Id.* at 74. According to Guldi, Bivona's involvement with the Property began in 2009, shortly after Guldi was indicted for mortgage fraud. *Id.* at 29. Guldi testified that in 2009, he rented the Property to Bivona for Labor Day weekend, for $10,000 cash. *Id.* Pursuant to an oral lease, Bivona then allegedly agreed to rent the premises for $100,000 a year and to pay all maintenance, utilities and taxes. *Id.* According to Guldi, these expenses were never paid. *Id.* Guldi claims to have hired an attorney to commence eviction proceedings against Bivona, but by Guldi's account, this attorney took no action. *Id.* at 30; ECF 41, ¶ 7.

According to Bivona, before Guldi went to prison in 2011, he and Guldi discussed transferring the Property to Bivona's company, the Debtor herein, to protect the asset from seizure, and splitting the proceeds from an ultimate sale of the Property. Tr. Dec. 11, 2023 at 87. Bivona testified that Guldi, authorized him to act on behalf of 2027 Deerfield and transfer the Property to the Debtor. *Id.* at 93. Bivona claims that Guldi signed a corporate resolution for 2027 Deerfield to reflect this agreement to transfer the Property. *Id.* at 88. Guldi denies ever authorizing Bivona or 2027 Deerfield to transfer title of the Property to the Debtor. *Id.* at 31.

Bivona allegedly employed attorney, Edward Grossman, to assist with effectuating this alleged agreement to transfer the Property. Grossman testified that Bivona asked him to draft a corporate resolution transferring 2027 Deerfield's interest in the Property to Bivona. *Id.* at 123-26. Grossman purportedly drafted the resolution and took it, and other documents, to Guldi in prison to sign. *Id.* at 125. Guldi claims that Grossman did not visit him in prison, and he claims to have signed no such document. *Id.* at 130; ECF 41, ¶ 14. Neither Grossman nor Bivona produced a copy of this alleged corporate resolution.

In a somewhat cryptic letter to Guldi while he was in prison, dated April 3, 2012, Bivona complained that Guldi was not honoring their agreement, claiming the Property was encumbered with debt, and that Guldi's conduct voids their agreement. Miller Decl., Ex. 6, ECF 37-9. In this letter, Bivona requests that Guldi "…do the right thing [and] deliver 1999." *Id.* Guldi responded in an equally cryptic letter to Bivona, dated April 9, 2012, and acknowledged having entered into an agreement with Bivona to transfer assets in exchange for certain equity interests. Miller Decl., Ex. 7, ECF 37-10. Guldi also acknowledged that Bivona had made payment to and for the benefit of Guldi and Guldi's family worth an estimated $50,000. *Id.* He also attached a "Three Day Notice" containing a demand for "immediate payment of the rent past due" which

demanded Bivona to "vacate the Property and surrender it in good condition" unless Bivona paid Guldi $150,000 within three days. *Id.*

Bivona did not move out of the Property, and for the next eleven and a half years neither Guldi nor the Plaintiffs he controls took any action to regain possession of the Property. ECF 37-2, ¶ 25. Bivona has resided at the Property, on and off, since 2009 while Guldi was imprisoned. ECF 37-2, ¶ 26. Neither Guldi nor 2027 Deerfield nor the Guldi Trust has paid any real estate taxes, utilities, upkeep or maintenance for the Property since 2009; nor have they reported receiving or earning any income from the Property. Miller Decl., Ex. 8, ECF 37-11, Pls' Responses to Admissions Nos. 2-14.

By deed dated August 5, 2015, and recorded in the Suffolk County Clerk's Office on or about August 13, 2015, 2027 Deerfield transferred title of the Property to the Debtor.[6] Miller Decl., Ex. 2, ECF 37-5. Bivona signed the deed transfer on behalf of 2027 Deerfield, claiming he was granted authority by Guldi. Tr. Dec. 11, 2023 at 93. On this same date, the Debtor obtained title insurance. Herbst Decl., Ex. I, ECF 35-13. After receiving title, the Debtor encumbered the Property with three mortgages in 2015 and 2016, totaling approximately $1.4 million.[7] The first was a $374,000.00 mortgage, granted in August 2015, to Defendant, Spiegel/Voto. Herbst Decl., Ex. V, ECF 35-26, ¶ 18. On September 18, 2015, the Debtor granted a second mortgage in the amount of $900,000.00 to Defendant, Danmik. Herbst Decl., Ex. V, ECF 35-26, ¶ 20. On January 9, 2016, the Debtor granted a third mortgage in the amount of $165,000 to Steven

---

[6]    A correction deed was executed on September 17, 2015, and recorded on October 8, 2015, to correct the name of the grantor. Compl. ¶ 21.

[7]    The Court notes that Bivona claims a fraudulent mortgage satisfaction, presumably for the Greenpoint mortgages, was brought to the closing on the Mortgagee Defendants' loans. Bivona Aff., ECF 42, ¶ 6-7; Tr. Dec. 11, 2023 at 92-93.

Newman. Herbst Decl., Ex. V, ECF 35-26, ¶ 22. The proceeds of these mortgages purportedly were intended to fund renovations at the Property in preparation for an ultimate sale.

Guldi claims he first learned of the 2015 Deed in January 2023 after spending multiple days in the Suffolk County Clerk's office reviewing the status of various litigations. Tr. Dec. 11, 2023 at 51-55.

### The Quiet Title Action

On September 29, 2016, approximately one year after the transfer of the Property to the Debtor, and three years after the Greenpoint mortgage foreclosure was dismissed, the Debtor and the Mortgagee Defendants commenced a quiet title action in the Supreme Court of the State of New York, Suffolk County, to vacate the Greenpoint Mortgage (Index No. 615307/2016, "Quiet Title Action"), on the grounds that the statute of limitations to enforce those mortgages had expired. Herbst Decl., Ex. N, ECF 35-18. On November 30, 2018, a second amended complaint was filed in the Quiet Title Action to name DB Central, Inc. as a defendant. *Id.* According to the second amended complaint, DB Central was the current holder of the Greenpoint HELOC. *Id.* ¶ 15. According to the New York State Department of State, Division of Corporations, Guldi was the Chief Executive Officer of DB Central, and the address for service of process for DB Central was the same as Guldi's address, 100 Mill Road, Westhampton Beach, New York 11978. Herbst Decl., Ex. O, ECF 35-19. DB Central was served with the second amended complaint in the Quiet Title Action through the Secretary of State. Herbst Decl., Ex. Q, ECF 35-21.

By motion filed on March 11, 2019, the plaintiffs in the Quiet Title Action sought entry of a default judgment against, among others, MERS, Greenpoint, DB Central, and Steven Newman. Herbst Decl., Ex. R, ECF 35-22. DB Central was served with the motion at 100 Mill Road, Westhampton Beach, NY. Herbst Decl., Ex. T, ECF 35-24. By order dated July 25, 2019,

this motion was denied for failure to name an unrelated party. In July 2021, plaintiffs in the

Quiet Title Action moved for renewal of the motion for default and, upon renewal, by order,

dated January 25, 2022, the state court granted the default motion. Herbst Decl., Ex. M, ECF 35-

17. The state court ordered that the Greenpoint Mortgage and HELOC be voided, discharged,

and vacated of record. Herbst Decl., Ex. M, ECF 35-17. The court also ordered that MERS,

Greenpoint and DB Central, among others, "and every person or entity claiming an interest in the

[Property] by, through or under those defendants are forever barred from all claims to any estate

or interest in the [Property] that is adverse to or in derogation of: (i) [the Debtor's] fee interest as

of August 5, 2015; (ii) Danmik's $900,000 first mortgage interest as of September 18, 2015; and

(iii) Voto's, Spiegel's and Pensco's $374,000 second mortgage interest as of August 5, 2015."

Herbst Decl., Ex. M, ECF 35-17 at 4-5. Judgment was entered in the Quiet Title Action on

February 23, 2022 ("Quiet Title Judgment"). Herbst Decl., Ex. Y, ECF 35-28. DB Central was

served at 100 Mill Road with notice of entry of both the Quiet Title Judgment and the January

25, 2022 order. Herbst Decl., Ex. M, ECF 35-17; Herbst Decl., Ex. Y, ECF 35-28.

### *Danmik Foreclosure and Debtor's Bankruptcy Filing*

In the meantime, the Debtor defaulted on the Danmik mortgage, and on September 6,

2022, the Suffolk County Supreme Court entered a Judgment of Foreclosure and Sale in favor of

Danmik. Reidler Decl., Ex. 2, ECF 37-21. On February 8, 2023, one day before the Property was

scheduled to be sold, the Debtor filed a chapter 11 case, thereby staying the foreclosure sale. On

May 24, 2023, the chapter 11 Trustee was appointed. Case No. 23-70447, ECF 76.

The Trustee moved, on November 6, 2023, for court approval to sell the Property to

Bivona for $3,750,000. Case No. 23-70447, ECF 106. On November 27, 2023, the Plaintiffs

objected to the sale motion claiming the Debtor did not own the Property. Case No. 23-70447,

ECF 112. Prior to this time, neither Guldi nor Plaintiffs had initiated any legal action to regain title to the Property.

On December 11, 2023, this Court held an evidentiary hearing regarding Plaintiffs' objection to the Trustee's proposed sale at which time the Court heard testimony from Bivona, Guldi and Grossman regarding the circumstances surrounding the 2015 Deed. Shortly thereafter, on January 21, 2024, the Plaintiffs, represented by Amish R. Doshi, Esq., commenced this adversary proceeding against the Debtor, Bivona, and the Mortgagee Defendants, seeking declaratory judgment that the Property is not property of the estate, and the Trustee has no authority to sell it. Plaintiffs assert that the liens and mortgages placed by on the Property by the Debtor, along with the deed, are *void ab initio*. The Mortgagee Defendants, Bivona, and the Trustee, acting for the Debtor, answered the complaint asserting various defenses including *res judicata*, various estoppel theories, laches, unclean hands, and ratification. ECF 9, 12, 13, 17. The Defendants also assert counterclaims to quiet title in their favor, including a claim for declaratory judgment by the Trustee that the Debtor owns the Property by virtue of adverse possession. ECF 9.

On November 15, 2024, Amish Doshi, filed a motion to withdraw as counsel for the Plaintiffs. ECF 31. This motion was granted, and as a consequence, Plaintiffs now are unrepresented. ECF 40.

## DISCUSSION

The Trustee moves for summary judgment arguing that the Plaintiffs' claims should be dismissed based on judicial estoppel, tax estoppel, equitable estoppel, *res judicata*, and laches. The Trustee also seeks summary judgment on his second counterclaim, for adverse possession. The Mortgagee Defendants move for summary judgment arguing that the Plaintiffs' claims

should be dismissed based on judicial estoppel, equitable estoppel, *res judicata*, laches, adverse possession, unclean hands, and Plaintiffs' ratification of the 2015 Deed. In his opposition and cross-motion for summary judgment, Guldi, on behalf of the Plaintiffs, maintains his allegations that the 2015 Deed was fraudulent and should be voided, along with the Mortgagee Defendants' mortgages. Guldi, a disbarred attorney, has no authority to appear on behalf of Plaintiffs. Nonetheless, the Court has read and considered the contents of Guldi's opposition to the motions for summary judgment, as well as his cross-motion.

Under Federal Rule 56, the Court shall grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(a)). In ruling on a motion for summary judgment, a court must view all evidence "'in the light most favorable to the non-moving party, . . . , and 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought,'" *Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co.,* 122 F. Supp.3d 44, 48 (S.D.N.Y. 2015) (citing Second Circuit authority).

### *Judicial Estoppel*

The Defendants argue that the Plaintiffs should be judicially estopped from asserting any interest in the Property in this case because Guldi, in connection with his criminal matters, repeatedly failed to disclose any interest in, direct or indirect, or any claim to, the Property and/or any income generated by the Property.

The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position taken by that party in the same or a previous legal proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *Robinson v. Concentra Health*

*Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015). It is an equitable doctrine that may be "'invoked by a court at its discretion'" in order to protect the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. at 749-50 (citations omitted). "Judicial estoppel is a flexible equitable doctrine that is not 'reducible to any general formulation of principle' and accordingly does not lend itself to rigid rules." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 796 (7th Cir. 2013), *cert. denied sub nom.*, 571 U.S. 1175 (2014). Courts, however, generally look for the existence of three factors: (1) that a party's new position is "clearly inconsistent" with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position such that a court's acceptance of the later inconsistent position would create "'the perception that either the first or the second court was misled,'" and (3) that "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. at 743, 750-51.

Judicial estoppel generally requires that the party to be estopped and the party who took an inconsistent position in a prior proceeding, be the same. However, "[w]hen a party asserts judicial estoppel based on a non-party's conduct, the [court may engage] in an equitable inquiry into the non-party's relationship with the party to be estopped and the effects of the non-party's conduct." *Schuring et al. v. Cottrell, Inc*., No. 13 C 7142, 2015 WL 5731642, at *1 (N.D. Ill. Sept. 29, 2015) (citations omitted). There may be circumstances under which it is appropriate to bind a party to a non-party's actions, and a "court needs freedom to consider the equities of the entire case." *Grochocinski*, 719 F.3d at 796.

Here, the Defendants ask this Court to apply judicial estoppel to preclude the claims by the Plaintiffs, 2027 Deerfield and Guldi Trust, based on *Guldi's* prior statements made in

connection with his criminal proceedings. Guldi is not a named plaintiff in this adversary proceeding, just as the Plaintiffs were nonparties to Guldi's criminal litigation. Although the Court recognizes the distinction between the entities and the individual, the circumstances of this case allow this Court to apply equitable principles to attribute Guldi's prior statements to the Plaintiffs herein. Guldi is the sole owner of 2027 Deerfield, and the sole beneficiary and co-trustee of the Guldi Trust. Guldi controls 2027 Deerfield, and along with a co-trustee controls the Guldi Trust. Thus, Guldi is authorized to "speak" for both entities. In his role as sole owner of 2027 Deerfield, and sole beneficiary of the Guldi Trust he is the only individual who stands to benefit from a ruling in favor of the Plaintiffs in this case. There is an identity of interests among Guldi, 2027 Deerfield and the Guldi Trust that must be recognized here. To find otherwise would put form over substance and allow Guldi to benefit from his prior misdeeds and apparent efforts to disclaim rights to the Property and rents flowing therefrom. Guldi a disbarred attorney is seeking to make this Court an accomplice to his decades-long fraudulent scheme. The Court will not allow this for reasons based in law and equity.

Having determined that judicial estoppel is applicable to the facts of this case, the Court now finds that the necessary elements of that doctrine have been satisfied. With respect to the first element of judicial estoppel, it is undisputed that the Plaintiffs' position in this case, *i.e.*, that the Debtor is merely a squatter who owes Guldi significant past due rent, is clearly inconsistent with statements Guldi made in his criminal disclosures. First, Guldi claims that he and Bivona entered into an oral lease for the Property around Labor Day 2009 pursuant to which Bivona allegedly paid Guldi $10,000 in cash and agreed to pay Guldi $100,000 yearly rent. Tr. Dec. 11, 2023 at 29. Yet, in the 2009 Affidavit, sworn to on October 29, 2009, shortly after this alleged rental agreement was entered into, Guldi claimed that his "[c]urrently earned income is

deminimus [sic]," . . . "from the sale of assets and approximately $1,000 per month in rents." Miller Decl., Ex. 5. And in the 2010 Affidavit sworn to by Guldi on March 16, 2010, Guldi claims to have only received $500 in November 2009 for defending an individual in traffic court, and other than that he had "no new sources of revenue." *Id.* ¶ 5. In March 2010, taking Guldi at his word, Bivona would have owed him a substantial amount of money for past rent. Guldi's failure to disclose the supposed oral lease with Bivona in the 2009 and 2010 Affidavits, is clearly inconsistent with the Plaintiffs' position in this litigation which tries to paint Bivona as lessee with a legal obligation to pay rent for occupying the Property. Second, Guldi testified that he found out about the alleged fraudulent deed to the Debtor in January 2023. Despite learning of the alleged fraudulent deed in January of 2023, just two months later, Guldi signed the 2023 Net Worth Statement in March of 2023 which lists "n/a" in the section "Money Owed to You by Others," and does not list an ownership interest in any real property. Miller Decl., Ex. 10, ECF 37-13, Sections C and G. Given the opportunity to correct these statements in a follow up to the U.S. Department of Probations in July 2023, Guldi again failed to disclose any interest in the Property and any claim against Bivona and/or the Debtor. Any argument by Guldi that he did not disclose the Property or the income derived therefrom because the Property was owned by 2027 Deerfield, not himself individually, is disingenuous, at best, as he is the sole owner and beneficiary of the Plaintiffs and any income to Plaintiffs would naturally flow through only to him. Based on the foregoing, the Court finds that the first element of judicial estoppel has been satisfied.

The second element of judicial estoppel requires this Court to find that Guldi's prior statements persuaded a court to accept its earlier position such that a court's acceptance of the later inconsistent position would create "the perception that either the first or the second court

was misled." *New Hampshire v. Maine*, 532 U.S. at 743. The Court finds that this element is also satisfied. First, there is no evidence in the record that Guldi's omissions from the 2010 Affidavit and 2023 Net Worth Statement were not accepted as true by the criminal courts, and Plaintiffs have not disputed this point. Second, were this Court to allow the Plaintiffs to argue here that the 2015 Deed was fraudulent and void, it would "create the perception" that either Guldi deceived the criminal courts by not disclosing his claims to ownership of the Property, or the Plaintiffs are misleading this Court now.

The third and final element necessary to sustain the Defendants' judicial estoppel argument is that Plaintiffs "would derive an unfair advantage or impose an unfair detriment" on the Defendants. *New Hampshire v. Maine*, 532 U.S. at 743. The Court finds that allowing Plaintiffs to assert an ownership interest in the Property now would allow the Plaintiffs an unfair advantage and impose an unfair detriment upon the Defendants. The Plaintiffs, controlled by Guldi, sat on their rights against Bivona and the Debtor for over ten years while Bivona occupied the Property. The Plaintiffs chose not to assert their rights to the Property while the Mortgagee Defendants and the Debtor expended significant time and resources to pursue the Quiet Title Action to remove the Greenpoint Mortgage from the Property. The Plaintiffs in this case seek not only to declare the 2015 Deed to the Debtor void, but also void the mortgages granted to the Mortgagee Defendants. The end result sought by the Plaintiffs is title to the Property, valued at over $3 million, free and clear of not only the Greenpoint mortgages (accomplished through the efforts of the Defendants), but also the Mortgagee Defendants' mortgages. This would not only provide an unfair advantage to Plaintiffs and result in a substantial disadvantage to the Defendants but would reward Guldi for orchestrating a decades-long fraudulent scheme to hide his assets. *See, e.g.*, *Festinger v. Edrich*, 820 N.Y.S.2d 302 (N.Y. App. Div. 2006) (applying

judicial estoppel and finding plaintiff's omission of real property as an asset in his criminal court disclosures precluded plaintiff from later claiming ownership of the property).

For all these reasons, the Court will grant the Defendants' motions for summary judgment and dismiss the Plaintiffs' claims seeking to void the 2015 Deed to the Debtor, under the theory of judicial estoppel.

### *Res Judicata*

The Trustee argues that the Plaintiffs' claims should be dismissed on the basis of *res judicata* because the Quiet Title Judgment found that, among others, DB Central "and every person or entity claiming an interest in the [Property] by, through or under [DB Central, among others] . . . are forever barred from all claims to any estate or interest in the [Property] adverse to or in derogation of [the Debtor's] fee interest [in the Property] as of August 5, 2015.. . . " Herbst Decl., Ex. Y, ECF 35-28.

*Res judicata*, or claim preclusion, precludes a party from re-litigating an issue that was previously decided. *Overview Books, LLC v. United States*, 438 F. App'x 31, 33 (2d Cir. 2011). To prove the affirmative defense of *res judicata*, the party must show that "the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Id.*

The Court finds that the first two elements are easily satisfied as it is undisputed that the Quiet Title Judgment is a final judgment on the merits by a court of competent jurisdiction. The Court finds that the third element is also satisfied. Under New York law, the concept of privity can be used to bind a party to litigation to a judgment entered in a previous case, even if they were not a named party in that previous case. *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995) (citing *Watts v. Swiss Bank Corp.*, 265 N.E.2d 739 (N.Y. 1970)). A

finding of privity requires an analysis of the relationship of the parties, but it is well-settled in the Second Circuit that "'literal privity is not a requirement for *res judicata* to apply.'" *Sweeper v. Tavera*, No. 08 Civ. 6372 (HB), 2009 WL 2999702, *4 (S.D.N.Y. Sept. 21, 2009) (citing cases). "'A privity analysis for *res judicata* purposes is broader than a traditional privity analysis.'" *Id.* (citing cases). "All that is necessary is a showing that the 'interests of the nonparty were adequately represented in the first action.'" *Vets North Inc. v. Libutti*, No. CV-01-7773-DRHETB, 2003 WL 21542554, *11 (E.D.N.Y. Jan. 24, 2003). Privity extends the effects of a judgment to parties with closely aligned interests. *Celotex Corp.*, 56 F.3d 343 at 346.

Even though the Plaintiffs and DB Central are distinct legal entities, in this Court's view the concept of privity in the context of a *res judicata* analysis is broad enough to include the relationship among the Plaintiffs, DB Central, and Guldi. Plaintiffs, 2027 Deerfield and the Guldi Trust, and DB Central are all entities that are wholly owned or controlled by Guldi. They share common ownership and a common mailing address and they are all entities which had some interest in or connection to the Property. Guldi is the common denominator both in the present action as sole owner of 2027 Deerfield and co-trustee of the Guldi Trust, and the Quiet Title Action, as the sole owner of defendant, DB Central, which also claimed an interest in the Property. Though DB Central and the Plaintiffs in this case are legally distinct entities, the underlying stakeholder behind all entities is one and the same, George Guldi.[8] For all these reasons, the Court finds that the third element of *res judicata* is satisfied here.

---

[8]    The Court recognizes that the Quiet Title Action was commenced in 2016 at a time when Guldi was imprisoned. However, Guldi was released from prison in 2017 and did not return to prison until March 2024. Plaintiffs in the Quiet Title Action moved for default judgment and served DB Central with that motion in 2021 at a time when Guldi had been out of prison nearly four years. Further, although Guldi claimed that service on him at 100 Mill Road, his law office address, was ineffective as he no longer practiced law, the address provided by Plaintiffs in this action (which was commenced in early 2024), is also 100 Mill Road. This is also the address for DB Central. Based on the foregoing, the Court

The fourth and final element of *res judicata* requires that the current action involve the same cause of action as the prior action. In the Quiet Title Action, the Debtor and Mortgagee Defendants sought and obtained a judgment voiding any interests asserted against the Property by the defendants in that action, including DB Central, that were adverse to the Debtor's fee interest, and/or the Mortgagee Defendants' interests as of 2015. In the current action, the Plaintiffs, who this Court has found were in privity with DB Central for purposes of this *res judicata* analysis, are asserting claims which directly challenge the Debtor's fee interest in the Property. To find for the Plaintiffs in this action would require this Court to effectively overrule the Quiet Title Judgment which found that Debtor was the owner of the Property. DB Central, controlled by Guldi, failed to challenge the validity of the Debtor's fee interest in the Quiet Title Action and the Court finds Plaintiffs claims are barred by *res judicata*. *Cf. White v. First Franklin Fin. Corp.*, No. 18-CV-3518 (DRH)(AKT), 2019 WL 1492294, at *6-7 (E.D.N.Y. Apr. 4, 2019) (finding plaintiffs' claims that mortgagee had no standing to seek foreclosure were barred by issuance of foreclosure judgment in favor of mortgagee in prior action under doctrines of *res judicata* and Rooker-Feldman).

Thus, the Court will grant summary judgment in favor of the Defendants and dismiss the Plaintiffs' claims for declaratory relief, based on the *res judicata* effect of the Quiet Title Judgment on the claims asserted here.

### Tax Estoppel

The Trustee argues that the Plaintiffs' claims should be precluded under a theory of tax estoppel. The Trustee acknowledges that no tax returns were ever filed for the Plaintiffs, but

---

does not believe that Guldi's imprisonment can be used as an excuse for his supposed ignorance of the Quiet Title Action.

argues that Guldi, whose last tax return was filed in 2018, at no time reported either ownership of the Property or income derived from the Property. Based on this, the Trustee argues the Plaintiffs should be estopped from claiming ownership of the Property here.

Tax estoppel precludes a party from taking a position in litigation inconsistent with a prior representation made on a tax return. *See Mahoney-Buntzman v. Buntzman*, 909 N.E.2d 62 (N.Y. 2009). The facts presented on summary judgment do not warrant a finding of tax estoppel in this case. Plaintiffs never filed tax returns and Guldi's last tax return, filed in 2018, was not produced as evidence in this case. Tr. Dec. 11, 2023 at 20-21. First, this Court has no idea what is contained in Guldi's 2018 tax return other than that he filed the return "based on [his] retirement income." Tr. Dec. 11, 2023 at 20. The Court will not make a finding of tax estoppel based on a tax return that is not in evidence. Second, the Court will not find that the failure to file a tax return is a basis to preclude the claims in this case on a tax estoppel theory. Thus, summary judgment in favor of the Defendants based on a theory of tax estoppel is denied.

### Equitable Estoppel

The Defendants argue that Plaintiffs' claims should be barred by the doctrine of equitable estoppel. The Trustee claims that the Debtor relied on its ownership of the Property when it expended funds over the years to maintain and improve the Property. The Mortgagee Defendants argue that the Plaintiffs stood by without objection as they issued mortgages and later litigated a foreclosure action against the Debtor. In addition, both the Debtor and the Mortgage Defendants prosecuted the Quiet Title Action to conclusion and removed significant liens from the Property. The Defendants argue that the Plaintiffs should not now be allowed to profit from their efforts when Plaintiffs failed for years to assert any ownership rights in the Property and contributed nothing to the Defendants' efforts which benefited the Property.

The doctrine of equitable estoppel is "properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001). Under New York law, "the elements of equitable estoppel are, with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts." *Babbit v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 93-94 (2d Cir. 2003). The party asserting estoppel must show with respect to itself: "(1) lack of knowledge and of the means of knowledge of the true facts; (2) reliance upon the conduct of the party to be estopped; and (3) prejudicial change in [its] position." *Id.* at 94. "The doctrine of equitable estoppel 'should be applied with great caution when dealing with realty.'" *Wallace v. BSD-M Realty, LLC*, 36 N.Y.S.3d 884 (N.Y. App. Div. 2016).

The Court will not grant summary judgment based on equitable estoppel. The second element of equitable estoppel requires a finding that the party to be estopped *intended* that their conduct would be acted upon by the other party. Issues of intent are fact-driven and generally not susceptible to resolution on summary judgment. *See e.g.*, *Deleu v. Scaife*, 775 F. Supp. 712, 716 (S.D.N.Y. 1991); *State of N.Y. v. N. Storonske Cooperage Co.,* 174 B.R. 366, 390 (N.D.N.Y. 1994). This is compounded by the directive that this Court must view all evidence in a light most favorable to the Plaintiffs and resolve all ambiguities in their favor.

For these reasons, summary judgment in favor of the Defendants based on a theory of equitable estoppel is denied.

### *Laches*

Both the Trustee and the Mortgagee Defendants argue that Plaintiffs' claims should be barred by laches. For all of the same reasons already outlined in this Decision, they argue that Guldi's delay in challenging the 2015 Deed was unreasonable and prejudicial to them.

A party asserting the affirmative defense of laches must prove: (1) unreasonable delay; and (2) prejudice. *Howard Univ. v. Borders et al.*, 588 F. Supp.3d 457, 478 (S.D.N.Y. 2022). To establish "unreasonable delay," a defendant has the burden to prove that the plaintiff was "'aware of [its] claim' and 'inexcusably delayed in taking action.'" *Id.* 478-79 (citation omitted). Prejudice can be demonstrated "by a showing of injury, change of position, loss of evidence, or some other disadvantage resulting from the delay." *White v. Priester*, 912 N.Y.S.2d 127 (N.Y. App. Div. 2010).

Guldi claims he was not aware of the 2015 Deed until January of 2023, and the Defendants have not presented any direct evidence to prove otherwise. The corporate resolution that Bivona allegedly relied upon in executing the 2015 Deed on behalf of 2027 Deerfield, and which would prove Guldi's awareness of the transfer, has never been produced. These circumstances create a genuine dispute as to a material fact that would preclude summary judgment based on laches, particularly, again, in light of the fact that this Court must view all the evidence and draw all reasonable inference in favor of the Plaintiffs.

For these reasons, summary judgment in favor of the Defendants based on a theory of laches is denied.

### *Unclean Hands*

The Mortgagee Defendants argue that the doctrine of unclean hands bars the Plaintiffs' claims. In addition to Guldi's failure to list the Property and Bivona's alleged 2009 rental

payment and ongoing rental obligations as assets in certain of his criminal disclosures, the Mortgagee Defendants argue that Guldi and Bivona conspired to shield Guldi's assets from seizure, and "laid in wait" to challenge the Mortgagee Defendants' interests until they successfully avoided the Greenpoint mortgages and financed the maintenance and improvement of the Property.

The doctrine of unclean hands bars a party that engaged in "immoral or unconscionable conduct" from asserting claims related to such conduct. *Lucia v. Goldman*, 44 N.Y.S.3d 89 (N.Y. App. Div. 2016) (citations omitted). This Court has little doubt that after a trial on the merits of this case, the facts would show that Guldi and Bivona did in fact engage in a scheme to shield the Property, and any value to be derived from the Property, from attachment in Guldi's criminal cases. However, this matter is before the Court on motions for summary judgment and the Court can only grant judgment in favor of the Defendants if the facts are undisputed. Both Guldi and Bivona deny any such scheme.

Thus, summary judgment in favor of the Defendants based on a theory of unclean hands is denied.

### Adverse Possession

Both the Trustee and the Mortgagee Defendants argue that even if we assume the Plaintiffs' version of the facts as true, and 2027 Deerfield is the assumed to be the owner of the Property, the Debtor can claim ownership of the Property by adverse possession. ECF 9, ¶ 131 (adverse possession "plead in the alternative" as the second counterclaim); ECF 38 at 25.

Under New York law, "[a] person or entity is an 'adverse possessor' of real property when the person or entity occupies real property of another person or entity with or without knowledge of the other's superior ownership rights, in a manner that would give the owner a

cause of action for ejectment." N.Y. Real Prop. Acts. § 501(1). An adverse possessor gains title to the occupied real property after ten years provided that the occupancy has been "adverse, under claim of right, open and notorious, continuous, exclusive, and actual." N.Y. Real Prop. Acts. § 501(2). "Under a claim of right means [having] a reasonable basis for the belief that the property belongs to the adverse possessor." N.Y. Real Prop. Acts. § 501(3). A party claiming title to real property under adverse possession must establish that their occupation of the property was (1) hostile and under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the statutory period of at least ten years. *See Estate of Becker v. Murtagh et al.*, 968 N.E.2d 433 (N.Y. 2012). The ten-year period commences when permission to remain at the premises is revoked. *Adams v. Estate of Jordan et al. (In re Adams)*, Case No. 13-45239-CEC, Adv. Pro No. 13-01486-CEC, 2016 WL 922239 at *2 (Bankr. E.D.N.Y. Mar. 10, 2016). Acquisition of title by adverse possession is not favored under the law and must be established by clear and convincing evidence. *See Estate of Becker v. Murtagh*, 968 N.E.2d 433 (N.Y. 2012).

The Defendants argue that the Debtor's and Bivona's possession of the Property was "hostile" to the Plaintiffs' interests, and they held possession under a claim of right for more than ten years following Guldi's 2012 letter in which he demanded that Bivona vacate the Property.

Even assuming this Court could make a finding under an adverse possession theory, which asks this Court to assume an alternative version of the facts which are at the moment hypothetical, the Court cannot, on the merits, grant summary judgment. There is no dispute that Bivona and the Debtor actually occupied the Property openly and notoriously to the exclusion of Guldi and the Plaintiffs since 2009. However, the law also requires that the alleged adverse possessor occupy the property with a "reasonable basis" to believe that the property belonged to them. The evidence presented on this point in the context of these summary judgment motions is

less than "clear and convincing" and is certainly disputed. There is a genuine dispute of material facts regarding whether Bivona had a reasonable basis to believe that he rightfully occupied the Property. From 2009 through 2015, it appears that Bivona possessed the Property under an alleged oral lease with Guldi. Guldi claims that in 2012 and possibly earlier, he made it clear to Bivona that he wanted him vacate the Property. This would, according to Defendants commence the period of "hostility" in 2012. Since 2015, however, the Debtor has claimed it is the title owner of the Property and title was transferred to it validly pursuant to an alleged corporate resolution authorizing transfer of the Property from 2027 Deerfield to the Debtor. Tr. Dec. 11, 2023 at 88. Guldi disputes that any such agreement or authorization existed, and thus, according to Guldi, Bivona has no reasonable basis for believing that the Property was legitimately transferred to the Debtor, and no reasonable basis for believing it held the Property under a claim of right. Tr. Dec. 11, 2023 at 130. The transfer of title by adverse possession is not favored under the law and it is certainly not warranted based on the facts as presented here on summary judgment.

The Court finds that genuine disputes of material fact exist which preclude any finding that the Debtor may claim title to the Property under a theory of adverse possession.

### *Ratification of the 2015 Deed*

Finally, the Mortgagee Defendants argue that even if we accept the Plaintiffs' claims that the 2015 Deed was unauthorized, Guldi's conduct, *i.e.*, his failure to report the Property and/or rights to income from the Property, in 2023, after he had already learned of the allegedly unauthorized 2015 Deed, constituted a ratification of the Debtor's ownership rights.

Under the doctrine of ratification, "'[a]n unauthorized execution of an instrument affecting the title to land or an interest therein may be ratified by the owner of the land or interest

so as to be binding upon him [or her].'" *Provident Bay Rd., LLC v. NYSARC, Inc.*, 987 N.Y.S.2d 124 (N.Y. App. Div. 2014). The failure to timely repudiate an unauthorized agreement when one knows of the material facts concerning the agreement, or when one's actions are consistent with an intent to be bound, may constitute evidence of ratification. *See id.* This legal theory also requires this Court to assume facts which have not been established, *i.e.*, that the 2015 Deed was unauthorized. This argument is therefore not ripe for adjudication. Thus, summary judgment in favor of the Defendants based on a theory of ratification is denied.

## CONCLUSION

For all these reasons, the Court will grant the Defendants' motions for summary judgment, in part, and dismiss Plaintiffs' claims for declaratory judgment and quiet title with prejudice. The Plaintiffs' cross-motion for summary judgment is denied. The Defendants are directed to submit a proposed order and a proposed judgment consistent with this Decision within seven days of entry of this Decision.

Although for purposes of summary judgment this Court resolved ambiguities and drew factual inferences in favor of the Plaintiffs, the Court finds it beyond reason that Guldi, a businessman and former lawyer with experience in real estate matters, and also a person with severe financial troubles, could be unaware of the 2015 Deed, the Quiet Title Action or any of Bivona's actions with respect to the Property, a house in Watermill, NY worth over $3 million. The tangled web created by Guldi to, in this Court's view, hide assets from creditors was in part predicated on the assumption that Bivona and other parties could be trusted to fulfill their role in the plan. In the end this appears to be Guldi's fatal mistake.

Today's ruling does not preclude any claim Plaintiffs or Guldi may assert against Bivona or the Debtor for their alleged fraudulent conduct with respect to the Property. The Court takes no position on any claim or claims these people wish to assert in another court. That is for another day.

Dated: Central Islip, New York
April 4, 2025



Robert E. Grossman
United States Bankruptcy Judge